James Gormley, M.D.President, Oklahoma State Board of Medical Licensure and Supervision 5104 N. Francis, Suite C Oklahoma City, Oklahoma 73118
Kim Glazier, R.N., M.Ed. Executive Director, Oklahoma Board of Nursing 2915 Classen Blvd., Suite 524 Oklahoma City, Oklahoma 73106
Dear Representative Shelton, Dr. Gormley, and Ms. Glazier: This officehas received your requests for an official Attorney General Opinion inwhich you ask, in effect, the following questions:
 1. Does 59 O.S. 2001, § 567.3a[59-567.3a](10)(a), which permits a Certified Registered Nurse Anesthetist ("CRNA") to administer anesthesia under the supervision of a medical doctor, osteopath, podiatrist, or dentist in a situation in which timely onsite consultation is available, apply to circumstances other than the perioperative or periobstetrical period, such as the management of chronic pain?
 2. Does the restriction in 59 O.S. 2001, § 567.3a[ 59-567.3a](10)(b), limiting the authority of CRNAs to "order, select, obtain and administer legend drugs" to the perioperative or periobstetrical period, apply only to that subsection, or does the restriction apply to all CRNA practice, including the authority to administer anesthesia granted in 59 O.S. 2001, § 567.3a[59-567.3a](10)(a)?
 3. Does a medical doctor who acts as a CRNA's supervising physician, or who refers a patient to a CRNA, aid and abet the unlicensed practice of medicine if the CRNA administers anesthesia for pain management purposes outside the perioperative or periobstetrical period?
Your questions relate to two different statutory grants of authority regarding the scope of practice for certified registered nurse anesthetists ("CRNAs"). These provisions appear in subsections (a) and (b) of Title 59, Section 567.3a(10) of the Nursing Practice Act and read as follows: *Page 2 
 a. "Certified registered nurse anesthetist" means any person who holds a license to practice as a registered nurse in this state and who:
 (1) has successfully completed the educational program of a school of nurse anesthetists accredited by the Council on Accreditation of Nurse Anesthesia Educational Programs,
 (2) is certified by the Council on Certification of Nurse Anesthetists as a Certified Registered Nurse Anesthetist within one (1) year following completion of such educational program, and continues to maintain such recertification by the Council on Recertification of Nurse Anesthetists,
 (3) administers anesthesia under the supervision of a medical doctor, an osteopathic physician, a podiatric physician or a dentist[1] licensed in this state and under conditions in which timely onsite consultation by such doctor, osteopath, podiatric physician or dentist is available, and
 (4) has received a certificate of recognition from the Board. *Page 3 
 b. A certified registered nurse anesthetist, under the supervision of a medical doctor, osteopathic physician, podiatric physician or dentist licensed in this state, and under conditions in which timely, on-site consultation by such medical doctor, osteopathic physician, podiatric physician or dentist is available, shall be authorized, pursuant to rules adopted by the Oklahoma Board of Nursing, to order, select, obtain and administer legend drugs, Schedules II through V controlled substances, devices, and medical gases only when engaged in the preanesthetic preparation and evaluation; anesthesia induction, maintenance and emergence; and postanesthesia care. A certified registered nurse anesthetist may order, select, obtain and administer drugs only during the perioperative[2] or periobstetrical[3] period.[4]
Id. (emphasis added) (footnotes added). We note that the authority for CRNAs to "order, select, [and] obtain" drugs and devices related to anesthesia services as described in subsection 567.3a(10)(b) was added to the Nursing Practice Act in 1997.[5] Prior to that time, subsection 567.3a(10)(a) comprised the extent of a CRNA's practice, which was limited to administering anesthesia under the supervision of an onsite physician. Also in 1997, the Legislature amended the Oklahoma Pharmacy Act to add the following section regarding CRNAs:
 Authority to order, select, obtain and administer drugs shall be allowed for a certified registered nurse anesthetist, pursuant to rules adopted by the Oklahoma Board of Nursing, only when engaged in the preanesthetic preparation or evaluation; anesthesia induction, maintenance or emergence; or postanesthesia care practice of nurse anesthesia. A certified registered nurse anesthetist may order, select, obtain and administer drugs only during the perioperative or periobstetrical period.
59 O.S. 2001, § 353.1b[59-353.1b].[6] *Page 4 
Although all CRNAs may administer anesthesia under subsection 567.3a(10)(a), not all CRNAs may order, select, and obtain the drugs and devices used in administering anesthesia under subsection 567.3a(10)(b). To be eligible for the extended scope of practice described under subsection 567.3a(10)(b), a CRNA must meet certain qualifications and apply to the Board of Nursing ("Board") for authorization, as follows:
 c. A certified registered nurse anesthetist who applies for authorization to order, select, obtain and administer drugs shall:
 (1) be currently recognized as a certified registered nurse anesthetist in this state,
 (2) provide evidence of completion, within the two-year period immediately preceding the date of application, of a minimum of fifteen (15) units of continuing education in advanced pharmacology related to the administration of anesthesia as recognized by the Council on Recertification of Nurse Anesthetists or the Council on Certification of Nurse Anesthetists,
 (3) provide evidence of professional liability insurance coverage, and *Page 5 
 (4) complete and submit a notarized application, on a form prescribed by the Board, accompanied by the application fee established pursuant to this section.[7]
Id. § 567.3a(10); see OAC 485:10-18-2; OAC 485:10-18-3. The Board may terminate the authorization granted to a CRNA as follows:
 d. The authority to order, select, obtain and administer drugs shall be terminated if a certified registered nurse anesthetist has:
 (1) ordered, selected, obtained or administered drugs outside of the certified registered nurse anesthetist scope of practice or ordered, selected, obtained or administered drugs for other than therapeutic purposes, or
 (2) violated any provision of state laws or rules or federal laws or regulations pertaining to the practice of nursing or the authority to order, select, obtain and administer drugs.
 e. The Oklahoma Board of Nursing shall notify the Board of Pharmacy within two (2) working days after termination of or a change in the authority to order, select, obtain and administer drugs for a certified registered nurse anesthetist.
Id. § 567.3a(10).
Finally, the Legislature required that the Board establish a Formulary Advisory Council to "develop and submit to the Board recommendations for an inclusionary formulary that lists drugs or categories of drugs that may be ordered, selected, obtained or administered" by CRNAs who are authorized under subsection 567.3a(10)(b) by the Board to do so. 59 O.S. 2001, § 567.4b[59-567.4b](A)(1); see also CRNA INCLUSIONARY FORMULARY,available at http://www.ok.gov/nursing/prac-crnafrm.pdf. With these provisions in mind, we now turn to your first question. *Page 6 
 DOES 59 O.S. 2001, § 567.3a[59-567.3a](10)(a), WHICH PERMITS A CERTIFIED REGISTERED NURSE ANESTHETIST ("CRNA") TO ADMINISTER ANESTHESIA UNDER THE SUPERVISION OF A MEDICAL DOCTOR, OSTEOPATH, PODIATRIST, OR DENTIST IN A SITUATION IN WHICH TIMELY ONSITE CONSULTATION IS AVAILABLE, APPLY TO CIRCUMSTANCES OTHER THAN THE PERIOPERATIVE OR PERIOBSTETRICAL PERIOD, SUCH AS THE MANAGEMENT OF CHRONIC PAIN?
The answer to this question is yes. As seen in the statutory language quoted above, subsection 567.3a(10)(a) contains no limitation on the setting in which a CRNA may administer anesthesia, as long as he or she does so under the supervision of one of the enumerated physicians, who must be readily available onsite for consultation. Subsection 567.3a(10)(a) contains no language similar to that found in subsection 567.3a(10)(b), regarding the "perioperative or periobstetrical period." However, unlike subsection 567.3a(10)(b), subsection 567.3a(10)(a) does not authorize a CRNA to "order, select, [or] obtain" various drugs and devices, but states only that a CRNA may "administer" anesthesia, implying that ordering, selecting, and obtaining the drugs and/or devices to be used are done by someone other than the CRNA, such as the supervising physician.
Therefore, under subsection 567.3a(10)(a), a CRNA may administer anesthesia under the supervision of an onsite physician in circumstances other than during the perioperative or periobstetrical period — such as treatment for chronic pain in a clinic setting — but may not order, select, or obtain the drugs or devices necessary to do so. We will now consider your second question. *Page 7 
 DOES THE RESTRICTION IN 59 O.S. 2001, § 567.3a[ 59-567.3a](10)(b), LIMITING THE AUTHORITY OF CRNAS TO "ORDER, SELECT, OBTAIN AND ADMINISTER LEGEND DRUGS" TO THE PERIOPERATIVE OR PERIOBSTETRICAL PERIOD, APPLY ONLY TO THAT SUBSECTION, OR DOES THE RESTRICTION APPLY TO ALL CRNA PRACTICE, INCLUDING THE AUTHORITY TO ADMINISTER ANESTHESIA GRANTED IN 59 O.S. 2001, § 567.3a[59-567.3a](10)(a)?
The answer to your second question is that the authority of CRNAs to select, order, obtain and then administer certain drugs (including legend drugs and controlled substances) and devices is limited to the perioperative or periobstetrical period. In contrast to subsection 567.3a(10)(a), which applies only to the authority to administer anesthesia, subsection 567.3a(10)(b) gives CRNAs the authority to also choose the particular drugs or devices to induce and maintain anesthesia, while preserving the requirement of onsite supervision of one of the enumerated physicians; however, a CRNA can exercise this discretion in limited circumstances, i.e., only during the perioperative or periobstetrical period. Thus, a CRNA cannot exercise the authority granted in subsection 567.3a(10)(b) to order, select, and obtain anesthesia in a setting that does not involve the perioperative or periobstetrical period, such as a pain management clinic.
 DOES A MEDICAL DOCTOR WHO ACTS AS A CRNA'S SUPERVISING PHYSICIAN, OR WHO REFERS A PATIENT TO A CRNA, AID AND ABET THE UNLICENSED PRACTICE OF MEDICINE IF THE CRNA ADMINISTERS ANESTHESIA FOR PAIN MANAGEMENT PURPOSES OUTSIDE THE PERIOPERATIVE OR PERIOBSTETRICAL PERIOD?
Finally, we address the question raised in Dr. Gormley's Opinion request letter regarding whether a medical doctor (as opposed to a podiatrist, osteopath, or dentist) who supervises, or refers a patient to, a CRNA who administers anesthesia outside the perioperative or periobstetric period aids and abets the unlicensed practice of medicine.[8] The answer is no.
The Allopathic Medical and Surgical Licensure and Supervision Act ("Medical Practice Act") declares that "[a]iding and abetting, directly or indirectly, the practice of medicine by any person not duly authorized under the laws of this state" constitutes unprofessional conduct for which a medical doctor licensed under the Medical Practice Act may be disciplined. 59 O.S.Supp. 2007, § 509[59-509](14). The practice of medicine is defined in the Medical Practice Act, 59 O.S. 2001, § 492[59-492](C)(2), (3)(a), which states in relevant part: *Page 8 
 C. The definition of the practice of medicine . . . shall include, but is not limited to:
 . . . .
 2. Any offer or attempt to prescribe, order, give, or administer any drug or medicine and surgery for the use of any other person, except as otherwise authorized by law;
 3. a. Any offer or attempt, except as otherwise authorized by law, to prevent, diagnose, correct, or treat in any manner or by any means, methods, devises [sic], or instrumentalities . . . any
disease, illness, pain, wound, fracture, infirmity, defect, or abnormal physical or mental condition of any person . . . except as otherwise provided by law.
Id. (emphasis added). These parts of the definition of the practice of medicine regarding administering drugs and preventing and treating pain are relevant in administering anesthesia. However, as we have seen in the Nursing Practice Act, 59 O.S. 2001, § 567.3a[59-567.3a](10)(a) and (b), the Legislature has "otherwise authorized" CRNAs to administer drugs — as well as to order, select, and obtain those drugs in prescribed circumstances — to induce and maintain anesthesia as part of their practice of nursing, as long as the CRNA is supervised by an onsite physician.
Some overlap therefore exists between the practice of medicine and the practice of nursing regarding anesthesia administration. The Medical Practice Act and the Nursing Practice Act both allow persons properly qualified and licensed under the respective acts to perform the tasks of selecting, ordering, obtaining, and administering anesthesia and maintaining anesthetized patients; therefore, administering anesthesia is within the scope of the practice of medicine by medical doctors, as well as within the practice of nursing by properly qualified and supervised CRNAs.
In recognition that persons other than medical doctors may, if authorized by law, perform acts that constitute the practice of medicine, the Medical Practice Act creates an exemption for those who are licensed and regulated by another profession:
 D. The practice of medicine and surgery, as defined in this section, shall not include:
 . . . .
 9. The practice of any other person as licensed by appropriate agencies of this state, provided that such duties are consistent with the accepted standards of the person's profession and the person does not represent himself or herself as a Doctor of Medicine, *Page 9 
Physician, Surgeon, Physician and Surgeon, Dr., M.D., or any combination thereof.
59 O.S. 2001, § 492[59-492] (emphasis added).
Thus, the Medical Practice Act does not consider a licensed CRNA who practices according to the requirements of his or her profession to be engaged in the practice of medicine, and does not apply to CRNAs who perform their duties as nurses under the conditions and limitations defined by the Nursing Practice Act. Therefore, a medical doctor licensed under the Medical Practice Act who supervises a CRNA who administers anesthesia for pain management purposes outside the perioperative or periobstetric period, or who refers a patient to a CRNA who is supervised by an onsite physician, does not aid or abet the unauthorized practice of medicine.
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. Under 59 O.S. 2001, § 567.3a[59-567.3a](10)(a), a Certified Registered Nurse Anesthetist ("CRNA") may administer anesthesia under the supervision of a medical doctor, osteopath, podiatrist, or dentist when timely onsite consultation is available from the physician in circumstances other than the perioperative or periobstetrical period, such as the management of chronic pain in a clinic setting. In such situations, a CRNA has no authority to order, select, or obtain the drugs and devices to be used in anesthesia, but is limited to administering the drugs and devices chosen by another medical professional who is authorized by law to do so.
 2. Title 59, Section 567.3a(10)(b) limits the authority of CRNAs who have received authorization from the Board of Nursing to "order, select, obtain and administer legend drugs" solely to the perioperative or periobstetrical period. A CRNA cannot exercise the authority granted in subsection 567.3a(10)(b) to select, order, and obtain drugs and devices in a setting that does not involve the perioperative or periobstetrical period, such as a pain management clinic.
 3. A medical doctor who acts as a CRNA's supervising physician, or who refers a patient to a CRNA who is supervised by an onsite physician, does not aid and abet the unlicensed practice of medicine as stated in 59 O.S.Supp. 2007, § 509[59-509](14), if the CRNA administers anesthesia for pain management purposes outside the perioperative or periobstetrical period. 59 O.S. 2001, § 567.3a[59-567.3a](10)(a).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 DEBRA SCHWARTZ Assistant Attorney General
[1] For purposes of this Opinion, we shall refer to the enumerated medical professionals collectively as "physicians." See 59 O.S.Supp. 2007, § 725.2[59-725.2](A)(1), (3), (4), (6) and (C) (stating that the term "physicians" includes podiatrists, dentists, osteopaths, and medical doctors).
[2] Under the Board of Nursing's rule OAC 485:10-18-1, "`Perioperative' means preanesthetic preparation or evaluation, anesthesia induction, maintenance or emergence, or poastanesthesia care of clients."
[3] "`Periobstetrical' means preanesthetic preparation or evaluation, anesthesia induction, maintenance or emergence, or postanesthesia care of the pregnant female." OAC 485:10-18-1.
[4] Unlike other advanced practice nurses with prescriptive authority, CRNAs authorized by the Board to select, order, and obtain drugs for anesthesia cannot write prescriptions for patients for use outside the facility where anesthesia is administered. See 59 O.S. 2001, §§ 353.1a[59-353.1a], 567.3a(6), (7)(c), and (8) (conferring on certain advanced registered nurse practitioners, clinical nurse specialists, and nurse-midwives authority to write or verbally authorize orders for drugs to be filled or dispensed by a pharmacist); but compare 59 O.S. 2001, §§ 353.1b[59-353.1b], 567.3a(10)(b) (stating CRNAs' prescribing authority to patients exists only in the perioperative or periobstetrical period).
[5] See 1997 Okla. Sess. Laws ch. 250, § 6 (eff. Nov. 1, 1997); OAC 486:10-18-1, "Authority to order, select, obtain and administer drugs."
[6] The Uniform Controlled Dangerous Substances Act, 63 O.S. 2001, § 2-312[63-2-312](D), contains similar language regarding CRNAs.
[7] According to Ms. Glazier's Opinion request letter, since 1997 20% of the CRNAs in this State have applied for and received authorization to select, order, and obtain the drugs and devices described in subsection 567.3a(10)(b). See letter from Kim Glazier, R.N., M.Ed., Executive Dir., Okla. Bd. of Nursing, to Drew Edmondson, Attorney General of the State of Oklahoma, p. 2 (July 9, 2008) (on file with author).
[8] See letter from James Gormley, M.D., President, Oklahoma State Board of Medical Licensure Supervision, to Drew Edmondson, Attorney General of the State of Oklahoma, p. 1 (July 23, 2008) (on file with author).